UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NELSON J. MEZERHANE GOSEN<br>19532 Planters Point Dr.<br>Boca Raton, FL 33434<br>DHS File No. A094 876 502<br><br>    Plaintiff,<br>v.<br><br>JANET NAPOLITANO, Secretary<br>U.S. Department of Homeland Security<br><br>ALEJANDRO MAYORKAS, Director<br>U.S. Citizenship and Immigration Services<br><br>VARSENIK PAPAZIAN, Director<br>USCIS, Miami Asylum Office<br>    DHS Headquarters<br>    3801 Nebraska Avenue, N.W.<br>    Washington, D.C. 20016<br><br>    Defendants. | Civ. No. |

## PETITION FOR A WRIT OF MANDAMUS AND COMPLAINT FOR DECLARATORY JUDGMENT

1. This action is brought against Defendants to compel the issuance of written notice granting asylum to Plaintiff based on his application for asylum properly filed and received by the Defendants 39 months ago, on August 6, 2010, and approved by Defendants on September 21, 2010.

2. Plaintiff's case remains within the jurisdiction of Defendants, who have improperly withheld notice of Plaintiff's approved asylum application for more than three years, to the grave detriment of Plaintiff, his wife, and 13 other members of Plaintiff's immediate family who

1

have independent but related pending asylum applications.[1] Defendants' over three year delay in issuing an approval notice to Plaintiff is unreasonable as a matter of law and contrary to the applicable law, regulations, and Defendant's own policies.

## PARTIES

3. PLAINTIFF, NELSON JOSE MEZERHANE GOSEN [*hereinafter* "Mr. Mezerhane" or "Plaintiff"], a native of Venezuela, born on September 18, 1943, resides in Boca Raton, Florida with his wife, Eleonora BLASINI DE MEZERHANE. Plaintiff is a founder and part owner of Globovisión, Venezuela's last independent and critical television station, as well as a reputable international businessman. Plaintiff has always abided by United States immigration laws and for more than 60 years traveled frequently between the U.S. and Venezuela with a valid B1/B2 Visitor's Visa.

4. Plaintiff last entered the United States on June 6, 2010, and filed his application for asylum with the United States Citizenship and Immigration Services ("USCIS") on August 6, 2010. As confirmed by various reputable sources, including the United States Department of State (DOS) in its 2010 Country Report on Human Rights Practices, the Government of Venezuela has systematically threatened, harassed, and harmed Plaintiff in order to silence Globovision's critical editorial line. Plaintiff, who was left with no recourse but to seek asylum in the United States, is now further injured by Defendants' failure to issue written notice of its decision on September 21, 2010, approving his application for asylum. Issuance of such notice is a non-discretionary and purely ministerial act.

5. DEFENDANTS, JANET NAPOLITANO, Secretary, U.S. Department of Homeland Security ("DHS"); ALEJANDRO MAYORKAS, Director, U.S. Citizenship and Immigration Services

---

[1] Defendants have also failed to issue notice of approval and/or failed to adjudicate the asylum applications of Plaintiff's four adult children, who have also filed Petitions for a Writ of Mandamus with this Honorable Court at the time of Plaintiff's filing.

("USCIS"); and VARSENIK PAPAZIAN, Director, U.S. Citizenship and Immigration Services, Miami Asylum Office, are charged by law with the statutory obligation to determine eligibility for asylum. *See* 8 U.S.C. § 1158(b); 8 C.F.R. § 208.9(a).

6. Defendant USCIS, a component of DHS, received Plaintiff's application for asylum on August 6, 2010. Because Plaintiff resides in Florida, the Miami Asylum Office, and Director Papazian, retain jurisdiction over his case. 8 C.F.R. § 208.9(b). Under the Immigration and Nationality Act ("INA"), when an applicant files his application for asylum affirmatively (not defensively in removal proceedings), USCIS has sole authority to adjudicate the application for asylum. 8 C.F.R. § 208.9(a) ("The Service shall adjudicate the claim of each asylum applicant whose application is complete within the meaning of § 208.3(c)(3) and is within the jurisdiction of the Service.").

## JURISDICTION AND VENUE

7. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction), in conjunction with 28 U.S.C. § 1361 (mandamus), the Administrative Procedure Act ("APA") at 5 U.S.C. §§ 555(b) and 702, and the Immigration and Nationality Act ("INA") and its related regulations.

8. Under 28 U.S.C. § 1361, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Section 242 of the INA (8 U.S.C. § 1252(a)(2)(B)(ii)), does not deprive this Court of jurisdiction, because the action at issue – namely, whether to inform an asylum applicant that his asylum application has been approved – is non-discretionary and purely ministerial. *See* 8 C.F.R. § 208.19 ("The decision of an asylum officer to grant or to deny asylum or to refer an asylum application . . . <u>shall be</u>

communicated in writing to the applicant.") (emphasis added); *cf. Singh v. Napolitano*, 710 F. Supp. 2d 123, 128 (D.D.C. 2010) (holding that the court lacked jurisdiction to consider a challenge to a discretionary action of the Attorney General) (emphasis added).

9. The APA requires USCIS to carry out its duties within a reasonable time. 5 U.S.C. §555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." (emphasis added). USCIS is subject to 5 U.S.C. §555(b). As set forth below, after entering a "final decision" in his case, the delay of 39 months and failure to provide Plaintiff notice of the approval of his asylum application is unreasonable. *See, e.g., Aslam v. Mukasey*, 531 F. Supp. 2d 736, 743 (E.D. Va. 2008) (nearly three-year delay in adjudicating an application to adjust status due to prolonged FBI name-checks was *prima facie* unreasonable); *Liu v. Novak*, 509 F. Supp. 2d 1, 10 (D.D.C. 2007) (four-year delay in adjudicating an application for adjustment of status was unreasonable); *Yu v. Brown*, 36 F. Supp. 2d 922, 932 (D.N.M. 1999)(two-and-a-half-year delay in processing applications for SIJ and adjustment of status is *prima facie* unreasonable).

10. This Court also has related jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201, to declare the rights of the Plaintiff, specifically, to issue a declaratory judgment that Plaintiff is an asylee as of September 21, 2010.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendants' headquarters is located in this District and a substantial part of the events giving rise to the present claims occurred in this District.

### FACTS AND BACKGROUND

*The Venezuelan Government Persecutes Nelson J. Mezerhane Gosen to Obtain Control over Globovisión*

12. Since 2005, Mr. Mezerhane has been the target of a permanent campaign of judicial harassment and intimidation by the Venezuelan government. The Venezuelan government has persecuted Plaintiff because he has refused to sell or silence Globovisión, the last remaining critical and independent television station in Venezuela.

13. President Chavez (now deceased), his prosecutors, and his hand-picked successor (President Maduro), have accused Mr. Mezerhane of a wide and dumbfounding variety of criminal acts, to discredit and vilify him in the national public opinion, and to silence and ultimately take control of Globovisión.  As recognized internationally and in reports by the U.S. Department of State, the Venezuelan government retaliated against Mr. Mezerhane by: unlawfully holding him in pre-trial detention for acts he did not commit; unlawfully expropriating his private properties, including his businesses and family homes; depriving him of his right to due process under the law; and making unfounded, politically-motivated, and public accusations against Plaintiff, thereby condemning his good name in the national public opinion and creating an atmosphere of hostility and aggression against Plaintiff and his family.  Through a relentless campaign of persecution, the government of Venezuela has driven Mr. Mezerhane and three generations of his family from their home and country.

14. Even after Mr. Mezerhane fled Venezuela, the government continued to confiscate his properties and petitioned INTERPOL to include Mr. Mezerhane on its "red list" for purported financial crimes.  On September 5, 2012, INTERPOL refused to do so, noting that Venezuela's case against him was "predominantly political in nature" and contrary to INTERPOL's Constitution.

15. Until his death in 2013, President Chavez regularly verbally attacked and condemned Mr. Mezerhane and his family on his nationally televised program and in the print media, calling

him a terrorist, a "mafioso," and a criminal, among other false accusations. Presently, the government of President Maduro is carrying on this legacy, refusing to return Mr. Mezerhane's properties or to exonerate him for crimes he did not commit.

16. Mr. Mezerhane was denied his rights to due process, to freedom of thought and communication, and to own property in Venezuela. He and his family have suffered and continue to suffer great hardship due to the actions of the Venezuelan government. Consequently, Mr. Mezerhane has sought respite and protection in the United States.

*Mr. Mezerhane's Asylum Request in the United States*

17. In May 2010, after visiting Miami for medical treatment, Plaintiff received a threatening phone call from President Chavez, warning him to either end Globovisión's editorial line or "suffer the consequences." Following this threat, on August 6, 2010, Plaintiff prepared and filed an application for asylum (Form I-589).[2]

18. Plaintiff was initially interviewed by the Miami Asylum Office on August 31, 2010. For approximately three years, from August 6, 2010 to April 29, 2013, Plaintiff made numerous status inquiries to Defendant USCIS. On several occasions, Defendant advised Plaintiff that his case was "pending preparation of a written decision." Subsequently Defendant informed Plaintiff that his case was pending completion of background checks.

19. However, on April 29, 2013, in response to a Freedom of Information Act/Privacy Act ("FOIA/PA") request that Plaintiff submitted on March 29, 2013, USCIS produced a heavily

---

[2] Plaintiff's four children, all adults, each also filed independent asylum applications, which include as derivatives their foreign-born spouses and children. Plaintiff's children explain that they face persecution in Venezuela due to their political opinion and their membership in the particular social group of the Mezerhane family. See 8 U.S.C. § 1158(b)(1)(B); 8 U.S.C. §1158(b)(1)(B) (applicants for asylum must establish that race, religion, nationality, membership in a particular social group, or political opinion is at least one central reason for their persecution). Defendants have also failed to issue notice and/or adjudicate Plaintiff's children's asylum applications, leaving a total of 15 members of the Mezerhane family, including Plaintiff's grandchildren and the spouses of his children with no resolution to their pending asylum claims.

6

redacted, 690-page reply.[3] Included in the agency's response were two un-redacted pages, which established that USCIS had granted Plaintiff's asylum application approximately two-and-a-half years earlier, on September 21, 2010. Specifically, the two pages state: "CURRENT STATUS: ASYLUM GRANTED" and "FINAL DECISION: GRANTED." Importantly, although USCIS' internal system includes sections for preliminarily approved asylum applications, Plaintiff's application was marked as "FINAL DECISION: GRANTED." The documents produced in response to Plaintiff's FOIA request also indicated that essential background checks, including by the Federal Bureau of Investigation ("FBI"), National Crime Information Center ("NCIC"), and others, had been successfully completed and had revealed no negative information. USCIS procedures require that these background checks be completed before a final decision can be made in an asylum case. 8 U.S.C. § 1158(d)(5)(A)(i); 8 C.F.R. § 208.14(b).

20. In September of 2010, Representative Connie Mack (formerly representing FL-14) made inquiries with USCIS regarding Plaintiff's pending asylum application. Defendants informed Congressman Mack's office that the Miami Asylum Office had approved Plaintiff's application in September of 2010. That information was later retracted.

21. To date, Plaintiff has not received formal notice from Defendants that his application for asylum was granted. Defendants have subjected Plaintiff to more than three years of bureaucratic hurdles and frustrations for an application that should normally be processed and decided within 180 days. *See* 8 U.S.C. § 1158 (d)(5)(A)(iii).

*Mr. Mezerhane has Exhausted All Administrative Remedies*

---

[3] On July 7, 2013, Plaintiff filed a Complaint for Declaratory and Injunctive Relief against Defendant United States Citizenship and Immigration Services under the Freedom of Information Act, 5 U.S.C. § 552, for injunctive and other appropriate relief, and seeking the disclosure and release of agency records improperly withheld by the Defendant. See Mezerhane Gosen v. Citizenship and Immigration Services, 1:13-cv-01091 (D.D.C. filed July 16, 2013). That Complaint remains pending before this Honorable Court.

22. Since filing his application in August 2010, Plaintiff has exhausted all administrative remedies and all other resources at his disposal. Because there is no other U.S. Government agency with jurisdiction over his asylum claim, Plaintiff has made numerous status inquiries to USCIS. Plaintiff also filed a request with the USCIS Ombudsman's Office requesting oversight and assistance with his case. That Office acknowledged receipt of Plaintiff's request, but has never substantively responded to Plaintiff's request.

23. Numerous members of Congress have inquired to USCIS regarding the status of Mr. Mezerhane's pending asylum application:

   A. Throughout the fall of 2010, Representative Theodore Deutch (FL-21) and Representative Connie Mack (formerly representing FL-14) made inquiries with USCIS regarding Plaintiff's pending asylum application.

   B. On December 15, 2010, Plaintiff, through prior counsel, submitted additional information and a written inquiry to the Miami Asylum Office regarding the status of his asylum application.

   C. On December 17, 2010, the Miami Asylum Office responded to Plaintiff's status request, stating: "You were interviewed by an Asylum Officer and your case is pending preparation of a written decision. The decision will be completed and mailed to you as soon as circumstances permit."

   D. In February 2011, Representative Mack and Representative Ros-Lehtinen contacted the Miami Asylum Office to voice their support for Plaintiff's asylum application. At that time, the Miami Asylum Office informed them that Plaintiff's application should be processed within 30 days.

E. In April 2011, Representative Mack contacted USCIS regarding Plaintiff's asylum application. At that time, in a clear reversal of previous information conveyed to the Congressman, USCIS informed Representative Mack that the application could not be completed due to pending background checks.

F. In May 2011, Senator Marco Rubio (Florida) inquired about Plaintiff's case. Senator Rubio's office confirmed that Plaintiff's asylum case had been moved to the Refugee and Asylum Division at USCIS headquarters in Washington, D.C., due to pending background checks. Notably, this response occurred despite documents produced by the agency in response to Plaintiff's FOIA request, which confirm that as early as September 2, 2010, FBI and NCIC background checks had come back as negative for any law enforcement "hits" or derogatory information.

G. On June 13, 2011, Plaintiff, through undersigned counsel, submitted additional evidence and a memorandum of law in support of his application for asylum to the Miami Asylum Office.

H. On October 21, 2011, Plaintiff, through counsel, submitted a written inquiry to the Miami Asylum Office regarding the status of his asylum application.

I. On October 25, 2011, the Miami Asylum Office responded to Plaintiff's status request, noting: "Your case is pending the completion of a background identity and security check investigation.  A notice of the final decision on your asylum request will be mailed to you upon completion of the investigation."

J. On February 29, 2012, Senator Robert Menendez (New Jersey) submitted a request on Plaintiff's behalf to U.S. Secretary of State Hillary R. Clinton.  Senator

      Menendez expressed his frustration with the "extensive delay" in adjudicating Plaintiff's asylum application, despite that Plaintiff and his family having "fully complied with all statutory and regulatory requirements." He requested that Secretary Clinton "contact [DHS] Secretary Napolitano [to] request[] that USCIS expeditiously review the Mezerhane family's application."

K.   On March 1, 2012, Plaintiff, through counsel, submitted a written inquiry to the Miami Asylum Office regarding the status of his asylum application.

L.   On March 1, 2012, a bipartisan group of eight members of the House of Representatives submitted a written request on Plaintiff's behalf, asking USCIS to "expedite its review of the pending asylum applications" for Plaintiff and his family. Signatories to this letter included: Representative Eliot Engel (NY-16); Representative Ileana Ros-Lehtinen (FL-27); Representative Connie Mack (formerly representing FL-14); Representative Russ Carnahan (formerly representing MO-3); Representative Mario Diaz-Balart (FL-25, formerly representing FL-21); Representative Albio Sires (NJ-8); Representative David Rivera (formerly representing FL-25); and Representative Theodore Deutch (FL-21).

M.   On April 10, 2012, USCIS Director Mayorkas responded to a request by Representative Ileana Ros-Lehtinen on Plaintiff's behalf. Director Mayorkas responded: "Mr. Mezerhane's asylum application remains pending. A decision cannot be issued at this time."

N.   On April 25, 2012, Plaintiff, through counsel, submitted a written inquiry to the Miami Asylum Office regarding the status of his asylum application.

O.  On August 1, 2012, Plaintiff, through counsel, submitted a written inquiry to the Miami Asylum Office regarding the status of his asylum application.

P.  On January 4, 2013, Plaintiff, through counsel, for the sole purpose of discovering whether broader issues were preventing adjudication of the asylum application, submitted an electronic inquiry to USCIS' Terrorism Related Inadmissibility Grounds ("TRIG") Working Group, inquiring whether the delay was related to any TRIG allegations. On February 7, 2013, USCIS' TRIG Working Group confirmed that Plaintiff's asylum application was not "on hold" based on a terrorism-related ground of inadmissibility.

Q.  In response to more recent inquiries to the Miami Asylum office, on April 11, 2013, April 18, 2013, and May 17, 2013, the Miami Asylum office responded: "You were interviewed by an Asylum Officer and your case is pending preparation of a written decision. Your case may involve unusually complex or novel areas of law that require consultation with our national headquarters. This process may significantly delay the issuance of a final decision. We share your concern regarding the delay. The progress of your case is being monitored and a decision will be completed and mailed to you as soon as the circumstances permit." Defendants' response confirms that a decision has indeed been made in Plaintiff's case and that Plaintiff has cleared all background checks.

R.  On May 8, 2013, a bi-partisan group of four members of the House of Representatives submitted a written request on Plaintiff's behalf, asking USCIS to expedite its review of Plaintiff's asylum application. Signatories to this letter

       included: Representative Engel (NY-16); Representative Ros-Lehtinen (FL-27); Representative Sires (NJ-8); and Representative Deutch (FL-21).

S.    On May 14, 2013, Representative Joe Garcia (FL-26), having just discovered the results of the FOIA request and the fact that asylum had been granted as early as September 21, 2010, submitted a written letter to USCIS Director Mayorkas expressing his "deep concern[]" that USCIS sent him and several other Members of Congress "the same vague reply that [Plaintiff's] application remains pending[,]" when Plaintiff's asylum application had been described in internal agency documents as "Asylum Granted."

T.    On May 16, 2013, after phone calls initiated by undersigned counsel, USCIS re-interviewed Plaintiff. Though undersigned counsel was originally told by Defendant Director Papazian that the interview would consist of four or five questions, the questioning endured for approximately eight hours. The interview included questions normally asked in an initial asylum interview, such as "why are you applying for asylum?" and "what do you fear upon your return to Venezuela?" These were questions that Mr. Mezerhane had fully answered and documented in the previous years. The asylum officer conducting the interview noted that the previous officer "had not kept good notes."[4]

U.    On May 16, 2013, Representative Garcia submitted a written inquiry to Miami's USCIS District Director, asking the Miami Asylum Office to "give this case all the necessary attention within your standard guidelines and procedures."

---

[4] Similarly, three of Plaintiff's four children were re-interviewed by the Miami Asylum Office on November 5, 2013. Plaintiff's counsel was told that these re-interviews were necessary because during the initial asylum interviews in 2010, the interviewing officers had taken "bad notes." Notably, three different asylum officers originally interviewed the three siblings and Plaintiff.

    V.    On May 22, 2013, Defendant USCIS Director Mayorkas responded to a letter submitted by Representative Engel, noting that "Mr. Mezerhane's case involves complex circumstances and facts" and that USCIS is "confident that the work being done is required under the laws we are sworn to execute, and that it is being performed diligently."

24. As evidenced by the fact that over three years ago USCIS granted Plaintiff's asylum request, Defendants possess sufficient information to establish that Plaintiff is eligible for and merits asylum under 8 U.S.C. § 1158 et seq. and 8 C.F.R. § 208 et seq. Yet, in contravention of regulations requiring them to do so, Defendants still have not issued Plaintiff formal notice that his asylum application was approved, which is a non-discretionary and purely ministerial act. Plaintiff and his family members are deeply prejudiced by this failure. They remain stateless individuals, with no country to call their home. Plaintiff's political enemies have also used Defendants' failure to timely notify Plaintiff of his asylum grant to further publically damage his reputation and attempt to delegitimize the persecution he suffered in Venezuela.

25. Internal USCIS guidelines repeatedly underscore the "timely completion of cases" as a fundamental and core value of the Asylum Corps. *See* Asylum Officer Basic Training Course (AOBTC), *Corps Value and Goals*, Rev. Date Sept. 13, 2006, p. 4. The AOBTC notes that "a delay in processing is distressing and unfair to the applicant ('<u>justice delayed is justice denied</u>'), impedes timely family reunification, risks violating statutory timeframes, and makes the Asylum Program vulnerable to fraud and abuse." *Id.* p. 4 (emphasis added). Plaintiff, who is now a stateless individual, persecuted by an authoritarian regime, continues to be denied the peace and respite he deserves.

26. While internal USCIS guidelines instruct Asylum Officers to "evaluate each [asylum] request on its own merit," USCIS has also failed to adjudicate the independent asylum claims of Plaintiff's four children, each pending for more than three years. *See* Asylum Officer Basic Training Course (AOBTC), Making an Asylum Decision (Dec. 5, 2002) at 6. Plaintiff's and his family's deserving claims are denied finality in clear violation of applicable laws, regulations, and internal USCIS policies.

## CAUSE OF ACTION

27. Plaintiff re-alleges and incorporates by reference the allegations in paragraphs 1-26 above.

28. Defendants' failure to issue formal notice of Plaintiff's approved asylum application violates the APA and USCIS' own regulations. Defendants have a clear, non-discretionary duty to promptly issue this notice to Plaintiff after a decision has been made; Plaintiff has a clear right to the relief requested; and there is no other adequate remedy available to Plaintiff. *See* 8 C.F.R. §§ 208.9(a); 208.19; *see also In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005); *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984) ("[A] writ of mandamus will issue only when the plaintiff has attempted to exhaust all administrative remedies and only when the defendant has a clear duty to act.").

29. Defendant owes Plaintiff the duty to act upon his approved application. *See Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50-51 (D.D.C. 2008) (noting that because USCIS is "the agency responsible" for adjudicating certain applications for immigration relief, the agency possesses a "mandatory, nondiscretionary duty to fulfill this role"). Although Defendants' authority to grant an application for asylum is discretionary, their duty to issue notice once a decision has been made is non-discretionary. *Compare* 8 U.S.C. § 1158(b)(2)(A) ("The Secretary of Homeland Security or the Attorney General <u>may</u> grant asylum . . . if the

Secretary of Homeland Security or the Attorney General determines that such alien is a refugee . . . .") (emphasis added) *with* 8 C.F.R. § 208.19 ("The decision of an asylum officer to grant or to deny asylum . . . <u>shall</u> be communicated in writing to the applicant.") (emphasis added).

30. Through correspondence with Plaintiff and members of Congress, Defendants have shifted responsibility for the delay in processing Plaintiff's application by repeatedly attributing it to uncompleted security checks and national security issues. However, documents received in response to Plaintiff's FOIA request confirm that the FBI and NCIC checks already had cleared as of September 2, 2010, just weeks after Mr. Mezerhane's initial asylum interview. The DHS also confirmed in writing that Plaintiff's case is not on hold for any terrorism grounds of inadmissibility. On September 21, 2010, internal USCIS documents note Mr. Mezerhane's status as "Asylum granted." According to the regulations and the USCIS Affirmative Asylum Procedures Manual, only after the applicant's identity and security checks have cleared can a grant of asylum be issued. 8 U.S.C. § 1158(d)(5)(A)(i); 8 C.F.R. § 208.14(b); *see also* USCIS, Affirmative Asylum Procedures Manual 50 (July 2010) ("Asylum Office personnel prepare a recommended approval as a final approval when . . . FBI name checks have been completed for the principal applicant and all dependents, and the results allow for a final approval . . . .").

31. If, after granting asylum, Defendants conduct additional investigations and conclude that an applicant is no longer eligible for asylum, the appropriate procedure is to initiate proceedings to terminate Plaintiff's asylum status. *See* 8 C.F.R. § 208.24(c) ("Prior to the termination of a grant of asylum . . . the alien shall be given notice of intent to terminate, with the reasons therefor, . . . [and] be provided the opportunity to present evidence showing that he or she is

still eligible for asylum [].") If the asylum officer decides that the asylee is no longer eligible for asylum, "the alien shall be given written notice that asylum status . . . and any employment authorization issued pursuant thereto, are terminated." *Id.* Defendants' *post hoc* justifications for failing to issue Plaintiff's asylum approval notice, citing to background checks that have already been completed, do not absolve Defendants of their affirmative duty to notify Plaintiff that he was granted asylum status.

32. Defendants breached their duty to act by willfully and unreasonably refusing to issue Plaintiff formal notice that his application for asylum was granted over three years ago. *See Geneme v. Holder*, 2013 WL 1291237 at *7 (D.D.C. March 31, 2013) (acknowledging that although adjudicating an application for immigration benefits is a "delicate and difficult task . . . that difficulty does not eliminate the agency's obligation to act on plaintiff's application in a reasonably timely manner") (internal citations and quotations omitted); *Hamandi*, 550 F. Supp. 2d at 51 (noting that USCIS does not possess "unfettered discretion to relegate aliens to a state of limbo, leaving them to languish there indefinitely") (internal citations and quotations omitted). Plaintiff has no other means to obtain this formal notice that his application has been approved. *See* 8 C.F.R. § 208.9(a) (vesting jurisdiction over affirmatively filed applications for asylum with USCIS). He has attempted to resolve this issue for over three years, and has exhausted all options; no other adequate remedy is available to Plaintiff, other than this Court's intervention.

33. Defendants' failure to notify Plaintiff of his approved asylum status has deprived Plaintiff and his wife (a derivative beneficiary on his asylum application) of their right under 8 C.F.R. § 208.19 to receive such notice. Consequently, Defendants also have deprived Plaintiff and his wife of the myriad privileges that accompany asylum status in the United States, to which

16

Plaintiff and his wife are entitled. Plaintiff's inability to travel internationally has restricted Plaintiff professionally, financially, and personally. Furthermore, the delay in notification has prevented Plaintiff and his wife from obtaining Lawful Permanent Resident (LPR) status, a right available to asylees after one year of physical presence in the United States. 8 U.S.C. § 1159(b).

34. This Court has the power to recognize and declare *nunc pro tunc* Defendants' September 2010 decision to grant Plaintiff asylum status. *See Matter of L-*, 1 I&N Dec. 1 (BIA 1940) (affirming the power to "correct[] a record of entry" because Congress never intended "the immigration laws to operate in so capricious and whimsical a fashion"); *Matter of T-*, 6 I&N Dec. 410, 413 (BIA 1954) ("It has long been the administrative practice to exercise [] discretion . . . *nunc pro tunc*, where complete justice to an alien dictates such extraordinary action."). A *nunc pro tunc* declaratory order is vital here as it would make Plaintiff and his wife immediately eligible to apply for Lawful Permanent Resident status. Five years after obtaining Resident status, Plaintiff and his wife would be eligible to apply for U.S. citizenship.

35. Without formal protection from his persecutors, Plaintiff – a prominent critic of the Venezuelan regime – is prevented from publicly denouncing the wrongs that have been committed against him by the Government of Venezuela. Without proof that they are asylees, Plaintiff and his wife remain stateless persons and are deprived of the peace of mind that accompanies asylum status in this country: safety, security, and a place to call home.

## PRAYER

WHEREFORE, Plaintiff prays that this Honorable Court:

1. Compel Defendants and those acting under them to perform their duty to issue formal notice of Plaintiff's already approved application for asylum;

2. Enter a judgment declaring that Plaintiff is an asylee as of September 21, 2010;

3. Enter a judgment declaring that Defendants' over three-year delay in notifying Plaintiff of his approved asylum application is unlawful and violates the APA, the INA, and USCIS's own regulations;

4. Grant such other and further relief as this Court deems appropriate under the circumstances; and

5. Grant attorney's fees and costs of court under the Equal Access to Justice Act (EAJA).

Respectfully submitted this, the 8th day of November, 2013.

**Grossman Law, LLC**
110 N. Washington Street, Suite 350
Rockville, MD 20850
Telephone: (240) 4039-013
Fascimile: (240) 453-0915
E-mail: sandra@grossmanlawllc.com
ATTORNEYS FOR PLAINTIFF

/s/Sandra A. Grossman
Sandra A. Grossman

/s/ Rachel C. Zoghlin
Rachel C. Zoghlin